IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS F., CAROL F., GRACE F., MARK P., KESTREL P., MAURA T., EDWARD T., EMILY T., ED L., and MINDY L., <br><br> Plaintiffs, <br><br> v. <br><br> AETNA LIFE INSURANCE, <br><br> Defendant. | ) Case No. 12-cv-02819-SC <br> ) <br> ) ORDER DENYING MOTION FOR <br> ) <u>CLASS CERTIFICATION</u> <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## I. **INTRODUCTION**

The above-captioned plaintiffs ("Plaintiffs") are adolescents with mental health conditions who sought care at residential treatment centers ("RTC(s)"), as well as their parents, who obtained health benefits plans that are insured or administered by Defendant Aetna Life Insurance ("Aetna").[1] Plaintiffs bring this putative class action against Aetna in connection with Aetna's

---

[1] Dennis F. and Carol F. are the parents of Grace F. ("Grace"). Mark P. is the father of Kestrel P. ("Kestrel"). Maura T. and Edward T. are the parents of Emily T. ("Emily"). Ed L. and Mindy L. are the parents of Mariah L. ("Mariah"), who is not a party to this action. The Court refers to Grace, Kestrel, Emily, and Mariah, collectively, as the "named patients."

denial of coverage for the named patients' treatment at RTCs. Plaintiffs allege that Aetna uses its Level of Care Assessment Tool ("LOCAT"), which consists of a one-page scoring form ("LOCAT Scoring Form") and a ten-page instruction manual ("LOCAT Guidelines"), to evaluate the medical necessity of the level of care for a patient's mental health treatment. Plaintiffs further allege that Aetna consistently did not follow the directions on the LOCAT Scoring Form when tabulating LOCAT scores. Plaintiffs bring two causes of action: (1) a claim for benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1132(a)(1)(B); and (2) a claim for declaratory and injunctive relief. Plaintiffs now move for certification of two putative classes, one under Federal Rule of Civil Procedure 23(b)(3) and the other under Rule 23(b)(2). ECF No. 46 ("Mot."). The Motion is fully briefed, ECF Nos. 64 ("Opp'n"), 74 ("Reply"), and appropriate for resolution without oral argument per Civil Local Rule 7-1(b). For the reasons set forth below, Plaintiffs' motion for class certification is DENIED.

## II. BACKGROUND

Plaintiffs are current and former members of employer-sponsored ERISA plans administered by Aetna. The specific terms of Plaintiffs' plans varied, but each plan provided coverage for residential treatment of behavioral health conditions if that treatment was "medically necessary." The plans also granted Aetna the discretion to interpret and determine what constitutes medically necessary services under the plan. Upon receiving a member's claim, Aetna conducts a review of the clinical

2

documentation and other information provided by the member's therapists and physicians to determine whether residential treatment is medically necessary.

The parties dispute LOCAT's role in medical necessity determinations. Plaintiffs characterize the LOCAT Scoring Form and Guidelines as governing plan documents, and they argue that Aetna's decision to deny coverage was based solely on their purported failure to meet LOCAT criteria. See Mot. at 6, Reply at 8. Aetna counters that LOCAT is merely a tool that Aetna clinicians use in making their medical necessity determinations, and that even if LOCAT does not suggest that the level of care sought is medically necessary, Aetna clinicians will exercise their independent clinical judgment to determine whether coverage should be allowed at the level requested. See Opp'n at 8.

The ten-page LOCAT Guidelines provide a scaffold of factors that Aetna clinicians should consider in making medical necessity determinations. Friedlander Decl. ¶ 23.[2] The LOCAT Guidelines are divided into five sections, which are referred to as dimensions: (I) acute dangerousness, (II) functional impairment, (III) mental status and comorbid factors, (IV) psychosocial factors, and (V) additional modifiers. Mot. Ex. 3 ("LOCAT Guidelines"). The dimensions are further divided into sub-dimensions, each of which contain a number of descriptors. Id. These descriptors function as a set of guidelines for determining where on the spectrum of

---

[2] Dr. Mark Friedlander, Aetna's Chief Medical Officer for Behavioral Health, filed a declaration in opposition to the motion for class certification. ECF No. 70 ("Friedlander Decl."). Pursuant to a Court order, the exhibits to the declaration were filed under seal.

3

symptoms a member is presenting. Friedlander Decl. ¶ 24. The descriptors are also associated with a numerical value or "score" that represent the clinical presentation of the member and range from least severe (a score of 1) to most severe (a score of 5).[3] Id.

Plaintiffs do not challenge any aspect of the LOCAT Guidelines. However, they do challenge Aetna's application of the one-page LOCAT Scoring Form, which provides brief instructions on tabulating a member's total LOCAT score. Plaintiffs argue that Aetna consistently tabulated members' LOCAT scores in a manner inconsistent with the instructions provided on the LOCAT Scoring Form. Specifically, Plaintiffs argue that Aetna (1) applied an incorrect method for tabulating the total scores for Dimensions III and V, and (2) erroneously left a number of sub-dimensions blank. With respect to the first argument, Aetna scored Dimension III as a "1" if any score in its eight sub-dimensions was "3" or greater; otherwise, Aetna scored Dimension III as "0." Plaintiffs contend that the total score for Dimension III should be equivalent to the sum of the scores for its eight sub-dimensions. The parties raise a similar dispute concerning the tabulation of Dimension V.

---

[3] For example, the descriptors for the suicidal intent sub-dimension of the acute dangerousness dimension are:

    1. None: No elements of suicidality.
    2. Minimal: Fleeting thoughts of suicide, but no plan, intent or actions. . . .
    3. Mild: Persistent thoughts of suicide with no feasible plan and no definite intent.
    4. Moderate: Suicidal plan and intent, but without organized means to execute the plan. . . .
    5. Severe: Patient has plan and intent to commit suicide, plus the means to execute the plan. . . .

LOCAT Guidelines at 2.

4

Plaintiffs assert that Aetna's alleged errors resulted in lower LOCAT scores, and in some cases lower scores resulted in denials of coverage.

Based on these alleged tabulation errors, Plaintiffs seek certification of two subclasses. The first subclass is "comprised of those Aetna participants and beneficiaries who, had Aetna filled in the Scoring Form as required, would have qualified for reimbursement for inpatient residential treatment." Mot. at 7. Plaintiffs propose Emily and her parents as the class representatives for Subclass 1. Emily received treatment for her mental health conditions at a facility in Utah from January 19, 2009 through June 18, 2010. FAC ¶ 5. Aetna covered the first ten days of Emily's RTC treatment, but denied coverage for the rest. Mot. Ex. 4. Aetna's denial letter explained:

> After review of the information received, the specific circumstances of this member[,] and the [LOCAT] Guidelines for Residential Treatment, coverage for the requested level of care is denied. The LOCAT guidelines include factors pertaining to the member's symptom intensity and intent and ability to comply with the treatment. The member's reported clinical condition as it relates to all these factors does not meet LOCAT guidelines for residential treatment. Treatment of this member could be provided at a lower level of care, or in another setting, e.g., partial hospitalization, intensive outpatient, or routine outpatient.

Id.

The second proposed subclass, Subclass 2, "consists of those individuals whose Scoring Forms contained blank dimensions." Mot. at 7. Plaintiffs contend that, for some of Aetna's insureds, "these blanks made the difference between reimbursement or not." Id. Plaintiffs propose that Grace, Mariah, and their parents

5

represent subclass 2, since there are blanks on Grace and Mariah's LOCAT Scoring Forms.[4] The denial letters Aetna sent to Grace and Mariah are substantially similar to the denial letter sent to Emily. See Mot. Exs. 4, 5, 6.

**III. LEGAL STANDARD**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, -- US --, 131 S. Ct. 2541, 2550 (2011) (internal quotations and citations omitted). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. (internal quotations and citations omitted).

Under Rule 23(a), four prerequisites must be satisfied for class certification:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

---

[4] In their reply brief, Plaintiffs clarify that they are seeking an injunction on behalf of Subclass 2 that would require Aetna to fill in the sub-dimensions left blank. Reply at 27. Aetna would presumably need to re-tabulate the class members' LOCAT scores pursuant to the proposed injunction, and where the new score justified a different level of care, Aetna could be required to cover additional costs. See Mot. at 21.

Fed. R. Civ. P. 23(a).

A plaintiff also must satisfy one or more of the separate prerequisites set forth in Rule 23(b): (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefiting the class as a whole would be appropriate; or (3) common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Dukes, 131 S. Ct. at 2551 (emphasis deleted). Analysis of these factors "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. at 2552 (internal quotations and citations omitted). "Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, e.g., jurisdiction and venue, is a familiar feature of litigation." Id.

**IV. DISCUSSION**

The Court finds that Plaintiffs have failed to establish commonality per Rule 23(a)(2) because Plaintiffs' claims are predicated on medical necessity determinations that are unique to each individual class member. To determine whether a particular class member is eligible for RTC care, or any other level of care, the Court would need to the review medical records and other

information specific to that member. Such individualized, claim-specific inquires are not amenable to class-wide resolution.

Plaintiffs attempt to sidestep this issue by focusing on Aetna's use of the LOCAT Scoring Form. Plaintiffs argue that Aetna employed a common, improper practice of tabulating class members' LOCAT scores. Thus, Plaintiffs reason that the Court need only address a few common questions concerning the appropriate method for tabulating LOCAT scores. The problem with Plaintiffs' position is that medical necessity determinations do not turn on LOCAT scores alone. According to Dr. Friedlander, LOCAT scores do not replace clinical judgment. The evidence bears this out. Aetna has pointed to a number of cases in which patients were approved for RTC or other treatment, despite having a LOCAT score that did not justify coverage for that level of care. See, e.g., Friedlander Supp. Decl. Ex. A at 17-18.

Plaintiffs contend that Dr. Friedlander has testified that LOCAT is the only criteria Aetna uses to make medical necessity determinations. See Mot. at 11. Dr. Friedlander did state that Aetna applies LOCAT criteria to all insureds seeking coverage for behavioral health claims. See Mot. Ex. 1 ("Friedlander Dep.") at 31, 46. However, Dr. Friedlander also testified that LOCAT was used "[a]s a guideline in addition to clinical judgment." Id. at 30. In fact, during his deposition, Dr. Friedlander stressed the importance of clinical judgment more than once. Id. at 48 (in making coverage determinations, Aetna clinicians will "review th[e] medical records, apply LOCAT criteria, apply clinical judgment, and make a determination . . . ."). Plaintiffs argue that Aetna was "doing everything it could" to incorporate relevant aspects of

1    clinical judgment into LOCAT. Reply at 6. That may be so, but
2    that does not mean that LOCAT replaced clinical judgment
3    altogether.
4        The Court does not mean to imply that LOCAT is irrelevant to
5    coverage determinations. To the contrary, much of the evidence
6    presented in connection with the instant motion suggests that a
7    member's LOCAT score is strongly correlated with the level of care
8    approved by Aetna. However, a classwide proceeding on Aetna's
9    LOCAT scoring practices would not "generate common answers apt to
10   drive resolution of the litigation," since coverage determinations
11   ultimately turn on the medical necessity of the treatment proposed.
12   See Dukes, 131 S. Ct. at 2551 (quotations omitted). Thus, even if
13   the Court were to agree with Plaintiff's proposed method of
14   tabulating LOCAT scores, and even if this method resulted in higher
15   LOCAT scores for some of Aetna's members, Aetna could still refuse
16   to provide those members with coverage on medical necessity
17   grounds. An inquiry into Aetna's method of tabulating LOCAT scores
18   might be probative of medical necessity and Plaintiffs' entitlement
19   to coverage, but it is not dispositive.
20       Plaintiffs argue that Aetna's pre-litigation correspondence
21   indicates that Aetna denied Plaintiffs' claims for RTC care based
22   not on medical necessity, but on Plaintiffs' failure to meet LOCAT
23   criteria. Reply at 8. Plaintiffs reason that Aetna may not now
24   raise medical necessity as an additional reason for a denial. Id.
25   Plaintiffs are correct that an ERISA plan administrator forfeits
26   the right to assert medical necessity as the basis for the denial
27   of a claim when it fails to raise that issue during the
28   administrative process. See Harlick v. Blue Shield, 686 F.3d 699,

720-21 (9th Cir. 2012). However, Aetna did cite medical necessity as the reason for denying Plaintiffs' claims, even if Aetna did not use those exact words. Aetna's denial letters to Plaintiffs state: "Treatment of this member could be provided at a lower level of care, or in another setting, e.g., partial hospitalization, intensive outpatient, or routine outpatient." Mot. Exs. 4, 5, 6. As Plaintiffs point out, these denial letters also state that the named patients' clinical conditions did not meet LOCAT guidelines for residential treatment. But this language merely shows that Aetna utilized LOCAT to arrive at the conclusion that treatment could be provided at a lower level of care.

In sum, the Court finds that Plaintiffs' class claims turn not only on the appropriate method for tabulating LOCAT scores but also on individualized questions concerning clinical judgment and medical necessity. As such, Plaintiffs' claims are not amenable to class-wide resolution.

**V.　CONCLUSION**

For the foregoing reasons, Plaintiffs Dennis F., Carol F., Grace F., Mark P., Kestrel P., Maura T., Edward T., Emily T., Ed L., and Mindy L.'s motion for class certification is DENIED.

IT IS SO ORDERED.

Dated: September 25, 2013　　　　　　_/s/ Samuel Conti_

　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE